IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Bobby J. Barringer,                    :

          Plaintiff,                   :

     v.                                :     Case No. 2:15-cv-3025

                                       :     JUDGE GEORGE C. SMITH
Commissioner of Social Security,             Magistrate Judge Kemp

          Defendant.                   :

REPORT AND RECOMMENDATION

I.  Introduction

     Plaintiff, Bobby J. Barringer, filed this action seeking
review of a decision of the Commissioner of Social Security
denying his applications for disability insurance benefits and
supplemental security income.  His current applications (he
received a partially favorable decision on prior applications)
were filed on February 18, 2010, and alleged that Plaintiff
became disabled on February 12, 2007.

     After initial administrative denials of his claim, Plaintiff
was given a video hearing before an Administrative Law Judge on
July 25, 2012.  In a decision dated August 7, 2012, the ALJ
denied benefits.  That decision was reversed by the Appeals
Council and remanded to the ALJ for further proceedings, which
included a second administrative hearing held on February 21,
2014.  In a decision dated March 26, 2014, the ALJ again denied
benefits.  That became the final decision of the Commissioner
when the Appeals Council denied review on October 22, 2015.

     After Plaintiff filed this case, the Commissioner filed the
administrative record on February 12, 2016.  Plaintiff filed a
statement of specific errors on April 19, 2016, to which the
Commissioner responded on August 4, 2016.  Plaintiff filed a

reply brief on August 22, 2016, and the case is now ready to decide.

II.  <u>The Lay Testimony at the Administrative Hearings</u>

Plaintiff, who was 50 years old as of the date of the first administrative hearing and who has a tenth grade education, testified as follows.  His testimony appears at pages 162-80 and 222-34 of the administrative record.

Plaintiff was asked about his diabetes at the first hearing. He said he had lost sixty pounds due to diabetes and that he obtained treatment from free clinics.  His blood sugar had been high and his doctor wanted to change his insulin but Plaintiff could not afford it.  High blood sugar made him tired and jittery.  He was also having problems with leg pain and swelling and with his vision.  He was using a cane for balance.

Other problems to which Plaintiff testified included two back surgeries and continued deterioration in his back.  He experienced sharp pain which radiated down both legs.  Plaintiff also suffered from arthritis in his right shoulder which resulted in surgery.  He had trouble lifting from the side.  He had hip pain as well and had diabetic sores on his left arm.

Plaintiff said he could stand for only five minutes and could walk only 50 yards even with a cane.  He could sit for ten minutes.  Most of the day was spent lying down.  Plaintiff said he had worked in the past at a junkyard and mowing cemeteries, but did not think he could do any work due to pain and fatigue.

At the second hearing, Plaintiff said that he had difficulty reading but could make change if given enough time.  He was still walking with a cane and used a ramp to get into his home. Plaintiff said again that pain kept him from working and that his blood sugar was still not under control.  His fluctuating blood sugar caused dizziness and headaches.  He was able to walk a block using his cane, but would not be able to do so without it.

-2-

He had fallen several times in the past few months.  Increased activity caused his legs to swell.

Plaintiff could lift a gallon of milk but nothing heavier. He began having neck pain six months before the hearing but had not been examined for it yet because he lost his medical card. Pain made it difficult for him to sleep and he took short naps during the day.  He watched television and did crossword puzzles (later testimony indicated these were word finder puzzles) but did no housework or yard work.  Plaintiff drove a car occasionally but mostly his wife did the driving.

Plaintiff's wife, Joan, also testified at the second hearing.  She confirmed Plaintiff's testimony that he could not sit or stand for very long and that he had trouble reading and writing.  He could also not do much lifting because of his back. She also testified to his difficulty sleeping due to pain. Plaintiff had not done yard work in four years.  He could not walk for long in a grocery store and would either sit in the car or pace in the parking lot.  (Tr. 180-87).

### III.  The Medical Records

The pertinent medical records are found beginning at page 603 of the record and can be summarized as follows.  Because Plaintiff does not contend that the content of records relating to his physical impairments are pertinent to either of his statements of error and does not summarize those records in his memorandum (Doc. 14), the Court will not include them in this summary.

Dr. Sarver, a clinical psychologist and neuropsychologist, performed a consultative examination on February 11, 2010.  There do not appear to be any records showing that Plaintiff had been treated by a mental health professional prior to that time. Plaintiff told Dr. Sarver he could not work due to problems with his back.  His affect was constricted and his mood was subdued,

-3-

and he reported low energy levels.  He was also depressed over his medical condition.  His reading and writing were described as "functional."  Dr. Sarver commented that Plaintiff's job history was good and his independent living skills were fair.  He thought that Plaintiff had a GAF of 55 and that he suffered from a pain disorder, an adjustment disorder, and a personality disorder. Plaintiff was moderately impaired in his ability to relate to others, could maintain attention and perform simple, repetitive tasks, and had a moderate impairment in his ability to manage work stress.  (Tr. 648-53).

Dr. Biscardi, a state agency reviewer, expressed an opinion about Plaintiff's mental residual functional capacity which appears to be based solely on Dr. Sarver's report.  Dr. Biscardi thought that Plaintiff was moderately limited in two of the four functional areas listed as part of the "B" criteria, those being maintaining social functioning and maintaining concentration, persistence, and pace.  Based on that, Plaintiff did not satisfy the criteria for disability under the Listing of Impairments.  In making his residual functional capacity finding, he concluded that Plaintiff had moderate limitations in his ability to understand, remember, and carry out detailed instructions, to perform within a schedule and maintain regular attendance, to complete a normal workday and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number of rest periods, to interact as appropriate or get along with the public and with coworkers, and to adapt to changes in the work setting. Elaborating on these findings, Dr. Biscardi said that Plaintiff could "understand, remember, carry out and sustain performance of 1-3 step tasks, complete a normal workday, interact briefly/superficially with coworkers/supervisors and adapt to changes/stressors associated with simple routine competitive work

-4-

activities." (Tr. 690-704). Shortly thereafter, Dr. Lewin, also
a psychologist, affirmed Dr. Biscardi's findings. (Tr. 746).

Dr. Sarver conducted a second evaluation of Plaintiff on
September 18, 2013. Again, Plaintiff was not being seen at that
time by a mental health professional. Dr. Sarver reported much
the same information as on the prior occasion and did not note
any significant changes in Plaintiff's mental health. His
diagnoses did not include a personality disorder but did include
both a pain disorder and a depressive disorder. Dr. Sarver again
rated Plaintiff's GAF at 55 and again found no difficulty in
understanding, remembering, or carrying out simple job
instructions. Unlike the earlier report, however, Dr. Sarver
noted some difficulty which Plaintiff manifested in performing
digit and word recall, indicating some difficulty with
attentional pace and persistence. Dr. Sarver appeared to
translate this into a comment that Plaintiff's "depression and
pain disorder may episodically attenuate his capacity to perform
multistep tasks." Lastly, Dr. Sarver thought Plaintiff would
have some difficulty organizing and working toward goals,
containing his anger, controlling his impulses, and structuring
his life independently of others. (Tr. 1138-44). Dr. Sarver
then filled out a form on which he indicated that Plaintiff had
only mild restrictions in his ability to deal with simple
instructions and a moderate restriction in his ability to respond
appropriately to usual work situations and changes in routine.
(Tr. 1145-47).

IV.  The Vocational Testimony

William Tanzey was called to testify as a vocational expert
at the second administrative hearing. His testimony begins at
page 187 of the administrative record.

Mr. Tanzey was first asked questions about someone with
Plaintiff's background and who could work at the light exertional

-5-

level, could climb ramps or stairs occasionally but not ladders, ropes, or scaffolds, could occasionally balance, kneel, stoop, crouch, and crawl, and who could occasionally reach overhead with his right arm.  The person needed to avoid concentrated exposure to extreme cold, vibrations and hazards such as moving machinery and unprotected heights and could perform simple, routine, repetitive tasks with occasional changes in the work setting and occasional interaction with coworkers, supervisors, and the public.  Mr. Tanzey  said that someone with those restrictions could do jobs like price marker, grader or sorter, or general cleaner.  He gave numbers for those jobs in the national and regional economies.  However, if the person could not read above the second grade level, given the other restrictions described, that person could not be gainfully employed.

V.   <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision which is under review in this case appears at pages 194-209 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014.  Second, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including diabetes mellitus, degenerative disc disease, degenerative joint disease, obesity, depressive disorder, pain disorder, and personality disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation

-6-

process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level but that he could climb ramps or stairs occasionally but not ladders, ropes, or scaffolds, could occasionally balance, kneel, stoop, crouch, and crawl, and could occasionally reach overhead with his right arm.  Also, Plaintiff needed to avoid concentrated exposure to extreme cold, vibrations and hazards such as moving machinery and unprotected heights and could perform simple, routine, repetitive tasks with occasional changes in the work setting and occasional interaction with coworkers, supervisors, and the public.  The ALJ further concluded that Plaintiff had no past relevant work.  Finally, he determined that Plaintiff could do the jobs identified by the vocational expert, including price marker, grader/sorter, and general cleaner, and that significant numbers of these jobs existed in both the national economy and the regional economy.  Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI.  <u>Plaintiff's Statement of Specific Errors</u>

In his statement of specific errors, Plaintiff raises these issues: (1) the ALJ failed to incorporate Plaintiff's moderate limitations in concentration, persistence, and pace into his residual functional capacity finding; and (2) the ALJ did not properly evaluate Plaintiff's credibility,  These issues are evaluated under the following legal standard.

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere

-7-

scintilla.'" <u>Id</u>. <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

A. <u>Limitations on Concentration, Persistence, and Pace</u>

Plaintiff argues, in his first statement of error, that the ALJ apparently found that Plaintiff suffers from moderate limitations in concentration, persistence, and pace, since he gave significant weight to the opinions of both Dr. Sarver and the state agency reviewers and each found such limitations. He then contends that restricting Plaintiff to the performance of simple, routine, repetitive tasks does not adequately account for such limitations and that, following the Court of Appeals' decision in <u>Ealy v. Comm'r of Social Security</u>, 594 F.3d 504 (6th Cir. 2010), it was error for the ALJ not to have included pace-based restrictions in his residual functional capacity finding and in the hypothetical question posed to the vocational expert.

Here is what the ALJ said about Plaintiff's mental capacity. First, the ALJ reviewed the "B" criteria, finding that Plaintiff had, among other limitations, moderate difficulties with regard

-8-

to concentration, persistence, and pace, relying on the statements contained in Dr. Sarver's second report and on Dr. Biscardi's findings. The ALJ specifically noted, however, that this portion of his decision did not constitute a residual functional capacity assessment. (Tr. 201-02).

When the ALJ did his residual functional capacity finding, he reviewed both Dr. Biscardi's opinion and the second of Dr. Sarver's reports. After recounting the various moderate limitations noted by Dr. Biscardi, the ALJ focused on the narrative comments indicating that Plaintiff could sustain performance of 1 to 3 step tasks and complete a normal workday. (Tr. 206). He gave that opinion, and its affirmance by Dr. Lewin, great weight. He gave Dr. Sarver's opinion "significant weight" but did not specifically adopt that opinion's findings about any limitations in concentration, persistence, and pace. Id. He then found, as outlined above, that Plaintiff's mental residual functional capacity did not include any pace-based restrictions.

Despite Plaintiff's insistence that the ALJ made a specific finding that Plaintiff experienced limitations in concentration, persistence, and pace, the ALJ did not make that finding. While he acknowledged findings to that effect in the opinions to which he gave either great or significant weight, he did not give them controlling weight or adopt each and every conclusion in those opinions. The only time he expressed the conclusion that Plaintiff had pace-based restrictions was in his discussion of the "B" criteria, which he explicitly noted was not a residual functional capacity analysis. Thus, this case does not present the same problem with which the Ealy court was confronted, where the ALJ actually accepted in full an opinion stating that the claimant could maintain attention only in two-hour segments, but then failed to incorporate that limitation into the hypothetical question posed to the vocational expert.

-9-

In <u>Dotson v. Comm'r of Social Security</u>, 2014 WL 6909437, *6 (S.D. Ohio Dec. 8, 2014), <u>adopted and affirmed</u> 2015 WL 1006087 (S.D. Ohio March 6, 2015), the Court said this about arguments based on <u>Ealy</u> where the ALJ made no specific finding about the presence of pace-based restrictions:

> The primary problem with that argument is that this case differs significantly from <u>Ealy</u> in term of the evidence which was before the ALJ and the findings which were made. In <u>Ealy</u>, the opinion evidence accepted by the ALJ was a residual functional capacity made by two sources which addressed twenty separate mental functional abilities; the sources found the claimant moderately limited in eight of them, two of which suggested limitations in maintaining attention and concentration for extended periods and in performing at a consistent pace. Here, by contrast, the finding to which Plaintiff points came not from a residual functional capacity evaluation but from the state agency reviewer's assessment of the "B" criteria, which compare the severity of a claimant's mental limitations to the Listing of Impairments. That assessment is not, as the ALJ specifically pointed out (Tr. 43), a residual functional capacity assessment. <u>See Sutherlin v. Comm'r of Social Security</u>, 2011 WL 500212, *1 (E.D. Mich. Feb. 8, 2011)("the limitations noted in the B criteria at the second and third steps differ from a residual functional capacity assessment, in that the latter requires a detailed assessment of a variety of functions that fall within each of the four broad categories listed in the B criteria"). When an ALJ specifically differentiates between the two findings and does not incorporate those limitations into his residual functional capacity determination, <u>Ealy</u> is inapplicable. <u>See Williams v. Comm'r of Social Security</u>, 2014 WL 63919, *25 (E.D. Tenn. Jan. 8, 2014) ("As for Plaintiff's argument with respect to <u>Ealy</u>, the ALJ did not determine Plaintiff had moderate limitations in concentration, persistence and pace in fashioning his RFC, and the proposition that simple, routine, repetitive tasks does not account for such limitations does not apply").

That being so, Plaintiff's first argument is properly viewed as raising the issue of whether the ALJ's decision not to include pace-based restrictions in his residual functional capacity

finding is supported by substantial evidence. <u>See Seevers v.</u>
<u>Comm'r of Social Security</u>, 2015 WL 2131104, *5 (S.D. Ohio May 7,
2015).

Dr. Sarver found pace-based restrictions in his second
opinion, but not in his first. Additionally, Dr. Sarver said, in
his second report, that these restrictions might only affect
Plaintiff's ability to attend to multi-step tasks. Further,
although Dr. Biscardi checked boxes indicating pace-based
restrictions, in the narrative portion of his report he did not
mention them, stating that Plaintiff could complete a workday
which involved the performance of simple 1-3 step tasks. From
all of this evidence, a reasonable person could have concluded,
as did the ALJ, that if Plaintiff were asked to do only simple,
routine, repetitive tasks, he would not have problems with
concentration, persistence, and pace. Therefore, this first
statement of error provides no basis for overturing the ALJ's
decision.

B. <u>The Credibility Finding</u>

Plaintiff's second claim of error involves the ALJ's
credibility determination. The ALJ rejected testimony that, if
it had been accepted, would have supported a finding of
disability. Plaintiff argues that the ALJ did not follow the
proper method of analysis which is prescribed in Social Security
Ruling 96-7p and in 20 C.F.R. §§404.1529(c)(3) and 416.929(c)(3),
particularly failing to discuss Plaintiff's "daily activities;
location, intensity and duration of his symptoms; the type,
dosage, effectiveness and side effects of medication; and
treatment other than medication that had been provided or used."
Statement of Errors, Doc. 14, at 18. The Commissioner responds
by arguing that the ALJ did consider these factors along with
others which relate to a claimant's credibility and made a proper
credibility finding.

A social security ALJ is not permitted to reject allegations

-11-

of disabling symptoms, including pain, solely because objective medical evidence is lacking. Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors. 20 C.F.R. §404.1529(c)(3). Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record. See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

Again, a review of the ALJ's decision is needed in order to resolve this issue. The ALJ determined that Plaintiff's testimony about his symptoms was "not entirely credible ...." (Tr. 203). He cited, as bases for that finding, the discrepancy between Plaintiff's allegations and the objective medical evidence, including evidence showing "only minimal musculoskeletal effects" and examinations which showed "no problems with his extremities and no neurological deficits." (Tr. 203-04). The ALJ also noted inconsistencies between Plaintiff's report that physical therapy was not very effective and the notes of the therapy sessions. (Tr. 204). He also pointed out that although Plaintiff said that a cane had been prescribed by his doctors, the records do not bear that out. Id. The ALJ considered Plaintiff's work history as well and the fact that most medical notes described him as being in only "mild distress." Id. Overall, therefore, he found Plaintiff's credibility to be "poor." Id.

Plaintiff is correct that the ALJ's decision contains no detailed discussion of other factors which bear on credibility, particularly Plaintiff's activities of daily living, except as

-12-

those activities related to whether the "B" criteria for mental impairments were satisfied (the ALJ found only mild restrictions in this area based on Plaintiff's testimony about his daily activities, <u>see</u> Tr. 201).  However, this omission is insufficient to justify a remand.

As this Court said in <u>Tomlin v. Comm'r of Social Security</u>, 2015 WL 877903, *7 (S.D. Ohio March 2, 2015), <u>adopted and affirmed</u> 2015 WL 1412500 (S.D. Ohio March 23, 2015),

> The Court begins with what appears to be an assumption underlying Plaintiff's argument—that an ALJ has not considered the various factors relating to credibility which are listed either in §404.1529(c) or SSR 96-7p if he does not discuss each of them in the administrative decision. That is not the law. It is true that the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." See SSR 96-7p; <u>see also Rogers v. Comm'r of Social Security</u>, 486 F.3d 234, 248 (6th Cir.2007). But "[t]here is no requirement ... that the ALJ expressly discuss each listed factor," <u>Coleman v. Astrue</u>, 2010 WL 4094299, *15 (M.D. Tenn. Oct.18, 2010), especially where the ALJ has "expressly stated that she had considered S.S.R. 96-7p" and "[t]here is no indication that the ALJ failed to do so." <u>White v. Comm'r of Social Security</u>, 572 F.3d 272, 287 (6th Cir.2009).

Here, the ALJ's decision makes clear that he was fully aware of the lay testimony and other documentation concerning Plaintiff's activities of daily living, and the ALJ cited the pertinent law when making his credibility finding.  Plaintiff does not suggest that the inconsistencies noted in the ALJ's decision are not supported by the record, nor does he contend that there was any information about therapy, medication, or side effects that the ALJ ignored or which would be pertinent to the credibility determination.

As this Court also said in <u>Tomlin, supra</u>, at *7, "the Court

must give heed to the proposition that an ALJ's credibility
finding is something that a reviewing court 'may not disturb
absent compelling reason.' Smith v. Halter, 307 F.3d 377, 379
(6th Cir. 2001).  Reviewing courts 'may not try the case de novo,
nor resolve conflicts in evidence, nor decide questions of
credibility.' Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.
1984)." Since the error alleged by Plaintiff is not, standing
alone, a sufficient basis to overturn the ALJ's finding on the
issue of credibility, there is no basis to remand the case for
further proceedings on this question.

### VII. Recommended Decision

Based on the above discussion, it is recommended that the
Plaintiff's statement of errors be overruled and that judgment be
entered in favor of the Defendant.

### VIII. Procedure on Objections

If any party objects to this Report and Recommendation,
that party may, within fourteen (14) days of the date of this
Report, file and serve on all parties written objections to those
specific proposed findings or recommendations to which objection
is made, together with supporting authority for the objection(s).
A judge of this Court shall make a de novo determination of those
portions  of the report or specified proposed findings or
recommendations to which objection is made.  Upon proper
objections, a judge of this Court may accept, reject, or modify,
in whole or in part, the findings or recommendations made herein,
may receive further evidence or may recommit this matter to the
magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to
object to the Report and Recommendation will result in a
waiver of the right to have the district judge review the
Report and Recommendation de novo, and also operates as a
waiver of the right to appeal the decision of the District
Court adopting the Report and Recommendation.  See Thomas v.

-14-

<u>Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                                        /s/ Terence P. Kemp
                                        United States Magistrate Judge